**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| CHRISTOPHER THORNTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) Civil Action No. 2:15cv828-WHA | |
| v. ) | |
| ) | |
| R&L FOODS, LLC and BIG BEAR ) (wo) | |
| HOLDINGS, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #30), filed by Defendants, R&L Foods, LLC and Big Bear Holdings, LLC and a Motion to Strike (Doc. #37), also filed by the Defendants.

The Plaintiff filed a Complaint in this case on November 3, 2015 and an Amended Complaint on March 28, 2016. The Plaintiff brings claims for violation of the Americans with Disabilities Act ("ADA"). The Plaintiff claims that he was denied access to a Wendy's restaurant in Montgomery, Alabama by the Defendants' failure to remove architectural barriers (Count One), that the Defendants have failed to make reasonable modifications in policy (Count Two), and that he has been denied full and equal enjoyment of services (Count Three).

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part and the Motion to Strike is due to be DENIED.[1]

---

[1] The Defendants seek to strike statements in the Plaintiff's brief as being unsupported by evidence or irrelevant. The court has only considered statements supported by evidence to the

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

extent that they are relevant and, therefore, the Motion to Strike is due to be denied as moot. Additionally, the Defendants, in their Reply, state that the Plaintiff has not responded to the Defendants' listed, undisputed facts, so the Plaintiff is deemed to have admitted all 19 facts and subparts. Although the Plaintiff has not responded to the Defendants' facts in list form, that is not required by any rule or order of this court. The Plaintiff has submitted evidence in response to the Defendants' evidence and the court has considered the evidence submitted by each party.

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Christopher Thornton ("Thornton") uses a wheelchair due to paralysis suffered as a result of a spinal cord injury.  Defendant R&L Foods, LLC ("R&L") operates a Wendy's restaurant at Defendant Big Bear Holdings, LLC's ("Big Bear") (collectively "Big Bear and R&L" or "Defendants") Ann Street, Montgomery, Alabama location.  Thornton alleges in the Amended Complaint that the restaurant was first constructed in 1985 and since that time, over $22,000.00 in alterations to the property have been made.

Thornton lives near the Wendy's restaurant and frequently visits it, both as a drive through window customer and a customer dining inside the restaurant.  Before filing his initial Complaint, Thornton alleges that he was denied full and safe access to all of the services offered.  After the initial Complaint was filed, it is undisputed that Big Bear and R&L repaired various ADA barriers. He contends, however, that barriers continue to exist, specifically:  the electric hand dryer protrudes into the path of travel, the sales and service counter is too high, there are insufficient ADA accessible tables in the dining area and they are not evenly disbursed through the different dining areas, and the seating booths have inaccessible components.

Thornton provides the court with an ADA Survey performed by Christine Green, dated March 21, 2016.  She states that the electric hand dryer is a protruding object because it protrudes into the path of travel 8.5 inches from the wall.  She states that the service counter is 37 inches. She states in her report that there are four hybrid booth tables which are accessible for a person in a wheelchair.  She further states, however, that the four booths are all located next to each other and are not dispersed through the dining room.  She offers the opinion that at least "one of the

4

accessible tables should be in the dining area with the windows facing Ann Street."   (Doc. #35-6).

Big Bear and R&L provide an April 22, 2016 Expert Report by Dennis N. Miles in which he states that he made site visits to the Wendy's on March 3 and April 21, 2016.   He states that he examined the conditions noted in the Plaintiff's March 21, 2016 Expert Report.   He offers the opinion that the electric hand dryer protrudes fewer than 4" from the wall and is within the Protrusion Limits in section 307.2 of the ADA.   He also states that a Safe Product floor mat can correct the sales counter height.   He states that there are four accessible seating spaces and because the small size of the dining area none of the tables need to be relocated.   He states that the dining tables are accessible.

## IV. DISCUSSION

Big Bear and R&L contend that summary judgment is proper as to all of Thornton's claims.    Big Bear and R&L argue that because the only private right of action under the ADA is for injunctive relief, and the current conditions of the Wendy's restaurant comply with Title III of the ADA, Thornton is not entitled to any relief.

### A.  Count One

Title III of the ADA provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a). Congress enacted the ADA on January 25, 1993.   For facilities, such as the restaurant in this case, that existed prior to its enactment date, the ADA states that discrimination includes a private entity's "failure to

5

remove architectural barriers ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal is not "readily achievable," failure of the entity to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(v). *Gathright-Dietrich v. Atlanta Landmarks, Inc*., 452 F.3d 1269, 1272–73 (11th Cir. 2006).

As to the architectural barriers claim in Count One in the Amended Complaint, as noted previously, Thornton has identified four which he claims persist: an electric hand dryer's protrusion, the sales and service counter's height, accessible table distribution, and inaccessible components in accessible booths. Big Bear and R&L state that all four conditions currently comply with Title III of the ADA. There are two separate issues presented by the motion, therefore: whether there is a dispute as to compliance in the four areas, and whether Thornton can seek relief as to an area even if there is compliance or whether those claims are moot.

1. Compliance

As to compliance, Big Bear and R&L provide the Declaration of Dave Westerfield ("Westerfield"), the R&L Corporate Representative, in which he states that the hand dryer in the wheelchair accessible bathroom currently protrudes only four inches from the wall, the sales and service counter is fewer than 36 inches above the floor, there are no full walls or partitions within the dining area, and eight seating spaces are wheelchair accessible and dispersed among four table tops. (Doc. #32-3). He states that he knows of no architectural conditions in violation of Title III. (Doc. #32-3). As noted above, Dennis Miles, an Accessible Design and ADA Specialist also provides a Declaration. He states that hand dryer, sales counter, and accessible seating all comply with the ADA. (Doc. #32-4). He states that there are no ADA barriers or violations. (Doc. #32-4).

Thornton contends that genuine issues of fact exist as to appropriate seating and compliance with the required repairs in two specific instances. Thornton argues that the service counter is an architectural barrier because Big Bear and R&L were required by their own expert to install a Safe Path Product, a mat, to raise the disabled person up to the counter, and the pictures provided by Big Bear and R&L in support of their motion show that the mat has not been installed.

In response, Big Bear and R&L provide evidence that the sales and service counter's height currently is less than 36 inches. (Doc. #32-3). The Defendants explain in brief that they installed the mat referred to in the expert's report, but then lowered the counter, and removed the mat. (Doc. #36 at p. 9 & n.6). The court agrees that achieving the compliant height in a manner other than that described by the expert does not, in the absence of any evidence to call into question whether the counter is in compliance, entitle Thornton to relief.

Thornton also states that the expert's requirements have not been met because the restaurant's accessible tables were not dispersed through the dining area and no accessible table was provided in the area facing Ann Street. Thornton acknowledges that Defendants' expert concluded that seating was compliant, but argues that because this opinion contradicts the requirements of his expert, genuine issues of fact exist. Thornton's expert report states that there are four hybrid tables which must be dispersed under "2010 ADA 226.2, which requires dispersion in dining areas. Therefore, three accessible tables must be provided throughout the dining areas not near the hybrid booth tables. At least one of the accessible tables should be in the dining area with the windows facing Ann Street." (Doc. #35-6).

Big Bear and R&L's argument with regard to Thornton's expert is that Thornton has not cited authority to suggest that there is a legal basis for requiring seats to face a certain way. Their

7

primary objection to the expert's opinion is that the regulation does not require that tables face Ann Street, although they also state that Thornton cannot base a claim on a conclusory allegation that the tables are not dispersed as he would like.

The court has reviewed the report. Although the requirement of the seat facing a particular direction appears to be Thornton's interpretation of the report as well, (Doc. #35 at p.12), Thornton's expert's report fairly could be read to state that to comply with the regulation, one accessible seat should be located in the portion of the dining area which has windows which face Ann Street, not necessarily that an accessible seat must be faced toward the windows. To the extent that there is a question over what the expert's opinion is, that question cannot be resolved without further development of the evidence in this case.

The Defendants also argue that because Thornton and other disabled individuals are not separated or segregated in the dining area in any way, the accessible seating is fully compliant. The only legal authority the Defendants cite, however, is the district court opinion in *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F. Supp. 2d 1217, 1231 (N.D. Ga. 2005). That decision, however, predates the 2010 dispersal standards relied on by Thornton's expert, and rests on lack of evidence as to costs of a change in the seating scheme. *See id.* at 1231.

The standard relied upon by Thornton's expert provides as follows: "Dispersion. Dining surfaces and work surfaces required to comply with 902 shall be dispersed throughout the space or facility containing dining surfaces and work surfaces." 36 C.F.R. § Pt. 1191, App. B. Thornton's expert has provided testimony that the seats do not meet that standard. The Defendants' expert does not agree. The court cannot conclude at this point in the proceedings, in view of the question of fact as to what Plaintiff's expert's opinion is, and due to the conflict in expert testimony as to whether there is compliant dispersement of tables, that the dispersement

standard has been met as a matter of law. Summary judgment, therefore, cannot be granted as to this aspect of the claim in Count One.

2. Mootness

With regard to the aspects of the claim in Count One which concern areas within the Wendy's restaurant which were not, but now are, compliant with ADA regulations, Thornton sites *Norkunas v. Seahorse NB, LLC*, 444 Fed. App'x 412, 417 (11th Cir. 2011) for the proposition that evidence of repairs is just counter-evidence for a trier of fact to consider and does not mean that the claim is moot. The actual language in *Norkunas* is that evidence there regarding changes made was counter-evidence to weigh in determining the "existence of barriers—not an argument of mootness as the plaintiff contends." *Id.* Mootness has been argued in this case, however, so *Norkunas* does not appear to be instructive here.

The concept of mootness in the context of repairs under the ADA was thoroughly discussed in *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007). The court explained that at least three factors are relevant in the analysis: (1) whether the challenged conduct was isolated or unintentional, (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit, and (3) whether, in ceasing the conduct, the defendant has acknowledged liability. *Sheely*, 505 F.3d at 1184. Although the burden of establishing mootness is "formidable," and requires a showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *id.*, courts have found mootness in cases in which a defendant made modifications to comply with the ADA. *See, e.g., Chambers v. Zesto Enterprises, Inc.*, No. 1:09cv292-WSD,

2009 WL 3200682 (N.D. Ga. Sept. 29, 2009) (finding mootness where defendant provided ADA complaint parking and entrances).

Thornton argues that the Defendants cannot meet the high burden of establishing mootness because they lack compliance policies and other locations of restaurants have had past compliance issues.

Although not neatly fitting within the factors of analysis outlined in *Sheely*, some courts have distinguished compliance cases in mootness analysis where the compliance involved costly, structural modifications, and not just a change of procedure. For example, in *Nat'l Alliance for Accessibility, Inc. v. Walgreen Co.*, No. 3:10cv780-J-32-TEM, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011), the court reasoned that because a store had invested substantial resources to be compliant with the ADA regulations including installing electric door openers and hardware on doors of bathroom stalls, it was unreasonable to think that Walgreens would remove the improvements or otherwise violate the ADA after the case was dismissed. *See also Lozano v. C.A. Martinez Family Ltd. P'ship*, 129 F. Supp. 3d 967, 971 (S.D. Cal. 2015) (stating "[u]nlike cases where defendants would have to undo structural alterations to violate the ADA or would have to actively implement different policies, here, Defendants could run afoul of the ADA in the future by mere inaction and allowing the paint on the accessible spaces to fade."). These cases are to be distinguished from *Sheely* in which the barrier was a policy of noncompliance which could be easily changed, 505 F.3d at 1184, or a case in which barriers had not yet been removed. *See Dunn v. Eagle Holdings, LLC*, No. 2:14cv539-PWG, 2015 WL 760247, at *4 (M.D. Ala. Feb. 23, 2015). This court is persuaded by the reasoning of these courts that removal of physical barriers which are not easily undone is to be afforded weight in the analysis of mootness.

The court has considered the relevant analytical factors under *Sheely*, 505 F.3d at 1184, including Thornton's reliance on an alleged lack of a policy or failure to comply at other locations. The evidence is that Big Bear and R&L installed a mat, but then changed the height of the service counter so that the mat was no longer needed to achieve compliance, making the correction more permanent than required. Big Bear and R&L also substantially changed the hand dryer to reach compliance, and have provided four accessible hybrid tables. Although reaching compliance in the counter service, tables, and hand dryer occurred after the lawsuit was filed, the fact that these were structural changes indicating permanence, and a desire to comply, appears to this court to satisfy the Defendants' burden in establishing mootness. Summary judgment, therefore, is due to be GRANTED as to the aspects of Count One which challenge barriers other than dispersing tables.

B.   Count Two

The statute upon which Thornton relies in Count Two is 42 U.S.C. §12182(b)(2)(A)(ii) which provides that discrimination includes

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

With regard to his claims in Count Two, Thornton points to paragraphs 33, 35, and 37 of his Amended Complaint in which he alleges a lack of policies or procedures for barrier removal, initiative in compliance-seeking, and building design. Thornton also states that there is a practice of not removing architectural barriers until the Defendants are informed by a disabled person that the properties are denying the disabled access. In his brief, Thornton has tried to

clarify the nature of his claims in Count Two, stating that his claim is that because there is evidence of multiple architectural barriers at the store at issue, the Defendant either had no policies to cause the removal of the barriers, or failed to implement policies it had. Thornton explains that his view of the evidence is that there is no policy against barriers.

The evidence cited by Thornton to demonstrate that there is no policy is largely the deposition testimony of R&L's corporate representative, Westerfield. Thornton cites his deposition for the proposition Westerfield was not aware of R&L policies about reviewing properties for compliance with ADA construction regulations.[2] Thornton acknowledges that Westerfield testified that he reviewed the Ann Street Wendy's parking lot for ADA compliance prior to the litigation, but Thornton says that the parking lot was non-compliant when the case was filed, calling that testimony into question. He also cites Westerfield's deposition that in this case and a previous one, stating that the event that precipitated an ADA Title III inspection was a complaint, and argues that this evidence supports his claim in paragraph 35 of the Amended Complaint that R&L has a practice of remediating ADA barriers only if a disabled person demands it. Thornton also cites to Westerfield's deposition to support that Westerfield is not aware of design standards.

Big Bear and R&L state that the deposition excerpts from Westerfield are regarding his lack of knowledge of *written* policies, but that Big Bear and R&L have compliance policies, just not written policies. (Doc. #35-2 at p.47: 16-23). The Defendants also have argued that Thornton lacks standing to bring the claims in Count Two because he himself suffered no injury

---

2 Westerfield was asked the following: "Does R&L have any policies at all that are written about reviewing properties for—reviewing its properties for compliance with ADA building construction regulations?" and he answered, "Not that I'm aware of." (Doc. #35-2 at p.47: 16-23).

other than the architectural barriers he identified. The Defendants argue, relying on *Gaylor v. Greenbriar of Dahlonega Shopping Center, Inc.*, 975 F. Supp. 2d 1374 (N.D. Ga. 2013), that there is no requirement that policies be adopted by a defendant.

The court in *Gaylor* determined that there were architectural barriers in that case, but then further determined that the failure to have a policy regarding treatment of disabled persons is not a separate violation of the law. 975 F. Supp. 2d at 1394-95.   In *Gaylor*, the plaintiff relied on general statements of the nature of disability discrimination and the goals of the ADA. *Id.* at 1395. Another district court, examining *Gaylor*, determined that the court's analysis in that case did not consider statutory provisions allowing for remedies in the form of injunctive relief against a policy.   *See Henizl v. Cracker Barrel Old Country Store, Inc.*, No. 14-1455, 2016 WL 2347367 at *14 (W.D. Penn. Jan. 27, 2016).   This court has been cited to a statutory provision regarding policies.   Therefore, this court is not persuaded to follow *Gaylor*.

As to the standing issue, in ADA cases, "courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

The Eleventh Circuit cited to 42 U.S.C. §12182(b)(2)(A)(ii), the provision invoked in Count Two, in *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002).   In *Rendon*, the court set out the definition of discrimination in the statute, and then the elements of a claim for discrimination. *See id.* at 1283 (stating "in order to state a valid claim, Plaintiffs must allege that they suffer from disabilities, and that Defendants' imposition or application of unnecessary eligibility criteria has screened them out or tended to screen them out from accessing a privilege or advantage of Defendants' public accommodation").   Adapting that analysis here, under the statute, Thornton must show that he suffers from a disability and that Big Bear and

13

R&L's lack of a policy or failure to modify a policy has prevented Thornton from fully and equally enjoying goods, services, facilities, privileges, advantages, or accommodations. *See id.* For purposes of standing, the lack of a policy only entitles Thornton to relief if he shows that he will suffer discrimination as a result of that lack of policy. *Shotz*, 256 F.3d at 1081.

Thornton has challenged several aspects of the Defendants' policies and practices, including a contention that there is a practice of not removing architectural barriers until the Defendants are informed by a disabled person that the properties are denying the disabled access. To satisfy the *Shotz* standing requirements, however, Thornton cannot merely point to areas where he finds that policies are deficient, but must show that he will suffer future discrimination as a result of that lack of policy.  As noted, many of the deficiencies Thornton has claimed are now moot, but Thornton has claimed, and created a question of fact to as to one aspect of his architectural barriers claim regarding dispersing of accessible tables, under 42 U.S.C. §12182(b)(2)(A)(iv) and (v).  To the extent, therefore, that he can proceed on an architectural barrier claim based on dispersement of tables, he has standing to assert, and has created a question of fact as to whether, he has been denied goods and services by Big Bear and R&L's failure to modify a practice or policy.

### C.  Count Three

Thornton explains that his claim in Count Three is based on being afforded the same experience that non-disabled persons have when they eat at the Wendy's restaurant at issue.   He says that because R&L and Big Bear only provide disabled individuals the opportunity to sit at hybrid style booths and not at a 2-top table adjacent to a window, or not near a wall, Big Bear and R&L gave Thornton an opportunity to participate in and benefits from goods and services that is not equal to the experience afforded to other individuals without disabilities.   He states

that Title III is not limited to the removal of physical barriers, but also applies to operational use of design elements.

Thornton relies in part on an Analysis and Commentary on the 2010 ADA Standards for Accessible Design published in 2000. One provision cited states that segregated seating for persons with disabilities is not allowed. 28 C.F.R. § Pt. 36, App. B, at p.632. Other quotations relied on by Thornton in his brief regarding "inferior seating" are discussions of seating in assembly areas such as theaters, concert halls, and auditoriums. *See* 28 C.F.R. § Pt 36, App. B, at 651 (2000). The court will rely on the portions of the regulations which refer to dining seating.[3]

Thornton's claim in Count III goes beyond a claim that a particular regulation has been violated, however. In *Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279 (11th Cir. 2002), a case

---

[3] The Analysis and Commentary on the 2010 ADA Standards for Accessible Design states with regard to dining that

> Section 226.1 of the 2010 Standards require that where dining surfaces are provided for the consumption of food or drink, at least five percent (5%) of the seating spaces and standing spaces at the dining surfaces comply with section 902. Section 902.2 requires the provision of accessible knee and toe clearance.
> Commenters stated that basing accessible seating on seating spaces and standing spaces potentially represents a significant increase in scoping, particularly given the ambiguity in what represents a "standing space" and urged a return to the 1991 Standard of requiring accessible seating based on fixed dining tables. The scoping change merely takes into account that tables may vary in size so that basing the calculation on the number of tables rather than on the number of individuals that may be accommodated by the tables could unnecessarily restrict opportunities for persons with disabilities. The revised scoping permits greater flexibility by allowing designers to disperse accessible seating and standing spaces throughout the dining area. Human factors data, which is readily available to designers, provides information about the amount of space required for both eating and drinking while seated or standing.

28 C.F.R. § Pt. 36, App. B p. 879 (2015).

15

relied on by Thornton, the court stated that a reading of the plain and unambiguous definition of discrimination provided in Title III covers both tangible barriers and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges. 294 F.3d at 1283. In a district court opinion from outside of this circuit, cited by Thornton, the court recognized a discrimination claim based on seating arrangement within a restaurant. *See Kalani v. Starbucks Corp*., 117 F. Supp. 3d 1078 (N.D. Ca. 2015).

These authorities appear to recognize that a claim can be brought under the general provision of the ADA which is separate and apart from a claim based on non-compliance with regulations. This court, therefore, will turn to the evidence presented relevant to this claim.

This court first notes that the analysis in *Kalani* occurred in the context of a different procedural posture because it occurred after a bench trial. *Id.* at 1081. That court engaged in an application of facts, analyzing evidence of how non-disabled patrons used the store as a "neighborhood gathering place." *Id.* at 1087. As R&L and Big Bear point out, it was significant to the court's analysis that the defendant stipulated that the store provided an opportunity to be part of a community and encouraged patrons to use the store as a neighborhood gathering place. *Id.* No similar stipulation, or even evidence to create a question of fact as to the role of the restaurant in the community, has been provided in this case.

In this case, Big Bear and R&L moved for summary judgment on the claim in Count III, citing Thornton's deposition testimony as to his ability to utilize Big Bear and R&L's services. When he was asked in his deposition whether anything other than architectural barriers denied

him the ability to obtain and enjoy restaurant goods and services he said no,[4] and that the barriers he perceived were architectural. (Doc. #32-1 at p.91:21-92:21).

In response, Thornton has cited to no evidence to create a question of fact as to whether the placement of the tables, apart from the regulatory issue, has denied Thornton an unequal opportunity to participate in and benefit from goods and services enjoyed by other non-disabled patrons. Thornton argues in his brief that during his deposition he was never asked about his experience at the restaurant or anything about his personal dining experience, and that he was asked questions about his Complaint before it was amended. Big Bear and R&L, however, met their burden under Rule 56 to point out to the court the basis for their argument that Thornton cannot establish the elements of his claim, and cited deposition testimony that he has not been denied services, other than the architectural barriers identified. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court must conclude that there is insufficient evidence to create a question of fact as to whether Thornton has been provided an opportunity to participate in and benefit from goods and services that is not equal to the experience afforded to other individuals without disabilities which is separate from the dispersement issue. Therefore, summary judgment is due to be granted as to the claim in Count III to the extent that Thornton claims a denial of enjoyment of services which is separate from the regulation regarding dispersement of accessible tables.

## V. CONCLUSION

In this case it is undisputed that after the initial Complaint was filed, corrective efforts to

---

4  Thornton testified as follows in his deposition:
   Q. Other than architecture, is there any other way you feel that the Wendy's on Ann Street followed policies or procedures that served as barriers to your receiving their goods and services?
   A. No, sir.  Beyond a few bad employees, no.
(Doc. #32-1 p.91: 21-92:2).

remedy physical, architectural barriers have mooted some of Thornton's claims. Questions of fact, however, have been created by conflicting expert opinions as to whether accessible tables have been dispersed throughout the Wendy's restaurant in compliance with ADA regulations. Accordingly, it is hereby ORDERED as follows:

1. The Motion to Strike (Doc. #37) is DENIED.

2. The Motion for Summary Judgment (Doc. #30) is DENIED as to Thornton's claims in Counts I, II, and III of the Amended Complaint for injunctive relief only to the extent that they are based on an alleged failure to comply with ADA regulations regarding dispersing accessible tables.

3. The Motion for Summary is GRANTED and judgment is entered as to the Defendants and against the Plaintiff on all other aspects of his claims in Counts I, II, and III of the Amended Complaint.

Done this 9th day of August, 2016.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE